IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHRISTA M. MADOCK

*Plaintiff,*

v.

JOHN M. McHUGH
Secretary of the Army

*Defendant.*

Civil Action No.: ELH-10-02706

**MEMORANDUM OPINION**

Plaintiff, Christa M. Madock, a civilian employee of the United States Army, filed an employment discrimination action pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.*[1] She alleges that she worked as a medical technologist for the United States Army Medical Research Institute for Infectious Diseases ("USAMRIID"), which discriminated against her on the basis of her disability, multiple sclerosis ("MS"). Further, she claims that the actions of USAMRIID resulted in her constructive discharge. Complaint ("Compl.," ECF 1) ¶¶ 5, 15, 26-27.

Plaintiff has filed a "Rule 15(a)(2) Motion for Leave to Amend Complaint" ("Mot. Am.," ECF 13), seeking to amend her Complaint to allege actual discharge, in addition to her claim of constructive discharge. *See* [Proposed] Amended Complaint ("Am. Compl.," ECF 13-2) ¶ 27. The defendant filed an Opposition to Motion to Amend ("Opp'n," ECF 15), and plaintiff has

---

[1] The Rehabilitation Act of 1973 incorporates by reference the remedies set forth under the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, on which plaintiff also relies. *See* 29 U.S.C. § 794a. Jurisdiction is proper pursuant to 28 U.S.C. § 1331.

filed "Replay [sic] Memorandum Rule 15(a)(2) Motion for Leave to Amend Complaint" ("Reply," ECF 16).

The Court has reviewed the parties' submissions and now rules without a hearing, pursuant to Local Rule 105.6. For the reasons that follow, the Court shall deny plaintiff's motion for leave to amend.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed suit on September 29, 2010. On two occasions (December 17, 2010 and January 18, 2011), Defendant filed consent motions for extensions of time in which to respond (ECF 4, ECF 6). The court granted both motions. The defendant has not yet answered the suit. Instead, on February 18, 2011, defendant filed a motion to dismiss or, alternatively, a motion for summary judgment (ECF 10), which is not yet ripe for decision.[2] Plaintiff filed her motion to amend 33 days later, on March 23, 2011.

According to the Complaint, Ms. Madock began working at USAMRIID in May 1999, as a "Medical Technologist." Compl. ¶¶ 5-6. At that time, USAMRIID operated a laboratory that required people who worked in that laboratory to participate in a "Special Immunization Program" ("SIP"). *Id.* ¶ 7. Ms. Madock's job description, however, did not require participation in SIP. *Id.* ¶ 8. In 2000, Ms. Madock was diagnosed with MS, and was advised by her physician that she could not participate in SIP because of her medical condition. *Id.* ¶ 10.

"Before April of 2009," plaintiff informed her supervisor, Major Shelley C. Jorgensen, that she had MS. *Id.* ¶ 15. Plaintiff alleges that Major Jorgensen and Colonel Sherman McCall, Major Jorgensen's supervisor, subsequently had a meeting with Ms. Madock, at which Colonel

---

[2] Defendant's motion to dismiss or, in the alternative, for summary judgment, is not addressed in this Opinion.

McCall informed Ms. Madock that "he believed she was at risk for suicide," and "advised her to seek counseling." *Id.* ¶¶ 16-17. She declined to do so. *Id.* ¶ 18.

On June 30, 2009, Ms. Madock met with Major Jorgensen and discussed her performance. *Id.* ¶ 19. At that time, Major Jorgensen purportedly informed Ms. Madock that her performance rating would be "no less than a 'B.'"[3] *Id.* ¶ 20. According to plaintiff, Major Jorgensen and Colonel McCall believed that Ms. Madock's MS was affecting her performance, and that she "had a risk of falling" and "intermittent explosive disorder." *Id.* ¶ 22. In August 2009, Major Jorgensen gave plaintiff a lower-than-anticipated performance rating ("C"), "with no pay raise," and "a written warning." *Id.* ¶ 25. In addition, plaintiff alleges that, on or about August 4, 2009, Colonel McCall and Major Jorgensen "chang[ed] her job description to require SIP so she would be forced out." *Id.* ¶ 25. Plaintiff claims, however, that she "was forced to begin an immediate search for other employment." *Id.* ¶ 29. On August 19, 2009, Madock submitted a "Reasonable Accommodation Request." Reply Ex. 2.

In the meantime, plaintiff also contested her performance appraisal. Compl. ¶ 32. She filed an "informal" complaint on July 28, 2009. *Id.* ¶ 30. On November 1, 2009, she filed a "formal" Equal Employment Opportunity ("EEO") complaint, alleging discrimination based on her disability. *Id.* ¶¶ 30-32. On November 25, 2009, Colonel McCall informed plaintiff that "he would not process her performance appeal because she had filed a formal EEO complaint." *Id.* ¶ 32. According to Ms. Madock, Colonel McCall's refusal to act was in retaliation for her EEO complaint. *Id.* ¶ 33. Then, on December 9, 2009, the "Agency Labor Counselor," Jeffery B.

---

[3] "Performance at USAMRIID was graded A,B,C, F. 'A' was the highest grade. 'F' was failing." *Id.* ¶ 19.

Miller, wrote to counsel for Ms. Madock, "threatening to remove [her] from her position unless she found another job." *Id.* ¶ 34.

Ms. Madock's Complaint further states: "Changing Ms. Madock's job description to require SIP was a constructive discharge because Ms. Madock was prevented by her MS from participating in SIP." *Id.* ¶ 27. In her proposed Amended Complaint, plaintiff seeks to change that statement, as follows: "Changing Ms. Madock's job description to require SIP was a*n actual or* constructive discharge because Ms. Madock was prevented by her MS from participating in SIP." Am. Compl. ¶ 27 (emphasis added).

To support her claim of actual discharge, plaintiff relies on a letter from Jeffrey B. Miller, an "Agency Labor Counselor," to plaintiff's attorney, dated December 9, 2009. Miller said:

> Management has expressed concern to me that your client may not be aware that if they cannot find such a [reasonable accommodation] job within [Ms. Madock's] parameters, that could trigger processing of a possible proposal to remove her from her position due to inability to perform critical elements of her current position. No such proposed removal has taken place at this point, but it is a possibility.

Reply Ex. 2.

Additional facts will be included in the discussion, as relevant.

## DISCUSSION

### I.

Rule 15 of the Federal Rules of Civil Procedure governs amendments to pleadings. Rule 15(a)(1) grants a party the right to "amend its pleading once as a matter of course," if done within 21 days after serving the pleading, FED. R. CIV. P. 15(a)(1)(A), or, "if the pleading is one to which a responsive pleading is required," a party may amend once as a matter of course, provided that it does so within "21 days after service of a responsive pleading or 21 days after

service of a motion under Rule 12(b), (e), or (f), whichever is earlier." FED. R. CIV. P. 15(a)(1)(B). Rule 15(a)(2) provides that, "[i]n all other cases," a party wishing to amend its pleading must obtain "the opposing party's written consent or the court's leave." Further, Rule 15(a)(3) states, in part: "The court should freely give leave [to amend] when justice so requires." *Id.* Leave to amend should be denied "'only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile.'" *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)). An amendment is futile "when the proposed amendment is clearly insufficient or frivolous on its face." *Johnson*, 785 F.2d at 510.

In this case, there is no suggestion that plaintiff has acted in bad faith. Although plaintiff did not file her Motion to Amend within 21 days of defendant's Motion to Dismiss, defendant cannot seriously claim prejudice, given that suit was filed only a few months ago, and the defendant has occasioned delay by his two requests for extensions. Therefore, the only question concerns futility.

Defendant complains that plaintiff's proposed amendment is futile for two reasons: (1) plaintiff "failed to allege in her EEO complaint that she was actually discharged" and accordingly "failed to exhaust her administrative remedies," Opp'n 2, 3, and (2) plaintiff was not actually discharged; she was, instead, transferred to a new position "as a reasonable accommodation" for her disability. *Id.* at 4.

In her "Memorandum Supporting Rule 15(a)(2) Motion for Leave to Amend Complaint" ("Memo. Mot.," ECF 13-1), plaintiff indicates that her motion was prompted by an allegation in defendant's motion to dismiss, claiming that she failed to identify her theory of disability

discrimination. Memo. Mot. 1-2. According to plaintiff, the proposed amendment is meant to "clarif[y] her complaint." *Id.* at 2. She explains that the addition of the words "actual discharge" merely elucidates the potential legal theories underpinning her claim, i.e., whether "Ms. Madock's job description [had been] changed to add a requirement she could not meet so she could be terminated" or whether the job description was changed "to create a condition so onerous she would be compelled to quit." Reply 5. In her view, the answer to this question is for the jury to decide or, instead, the Court on summary judgment. *Id.* at 3.

In her Reply, plaintiff further asserts that her "EEO complaint fully supports her civil complaint," and that her claim of actual discharge "arises out of" the factual allegations in her EEO complaint. *Id.* at 2-3. In this regard, she contends that she was "effectively" discharged in August 2009, when Major Jorgensen "announced to her the decision to effectively fire her," and it took her almost nine months to find a new position with her employer, which she did on or about March 28, 2010. *Id.* at 5-6.

## II.

Prior to filing suit under Title VII, a plaintiff is required to "exhaust all . . . administrative remedies by filing a charge" with the Equal Employment Opportunity Commission ("EEOC"). *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002); *accord Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005). The Rehabilitation Act of 1973, by its express language, incorporates the "remedies, procedures, and rights" of Title VII, including the requirement that a plaintiff exhaust her available administrative remedies before filing suit. *See* 29 U.S.C. § 794(a)(1). "The exhaustion requirement ensures that the employer is put on notice of the

alleged violations so that the matter can be resolved out of court if possible." *Miles*, 429 F.3d at 491.

"The EEOC charge defines the scope of the plaintiff's right to institute a civil suit." *Bryant*, 288 F.3d at 132. Notably, the EEOC charge "'does not strictly limit a . . . suit which may follow; rather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination.'" *Miles*, 429 F.3d at 491 (quoting *Bryant*, 288 F.3d at 132). It follows that the scope of the lawsuit may be broader than the language of the EEOC charge; "[i]f a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, the plaintiff may advance such claims in her subsequent civil suit." *Smith v. First Union Nat'l Bank*, 202 F.3d 234 (4th Cir. 2000).

I find no merit in defendant's exhaustion argument. In her EEO complaint, plaintiff stated, in part: "I believe the change in [SIP] vaccination requirements was created to force me out because of my multiple sclerosis." Reply 4; Opp'n Ex. 1. That statement is arguably ambiguous as to whether plaintiff was actually or constructively discharged. Moreover, given the ambiguity, the EEOC's investigation of Ms. Madock's claim might have embraced both constructive and actual discharge theories. Notably, courts liberally construe EEOC charges because they often are not completed by lawyers. *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005).[4]

Furthermore, no specific words or acts are required in order to show an actual discharge. Thus, an employer does not need to use the words "fired," "discharged," or "terminated" in order

---

[4] It seems that plaintiff's EEO complaint was completed by plaintiff, without legal assistance.

to establish a discharge. *See Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 185 (4th Cir. 2004); *EEOC v. Serv. News Co.*, 898 F.2d 958, 962 (4th Cir. 1990). Rather, "an actual discharge occurs when the employer, by words or acts, manifests a clear intention to dispense with an employee's services." *Payne v. Crane Co.*, 560 F.2d 198, 199 (5th Cir. 1977); *accord EEOC v. Marion Motel Assoc.*, No. 91-2070, 1992 U.S. App. LEXIS 9589, at *13 (4th Cir. May 5, 1992).

Nevertheless, the record reflects that, notwithstanding the actions of USAMRIID, plaintiff remained a civilian employee of the Army. In her Complaint, filed September 29, 2010, she avers that, "[a]t all times she *is* and was a civilian employee of the United States Army."[5] Compl. ¶ 1 (emphasis added). To be sure, plaintiff contends that, between August 6, 2009, and her reassignment on March 28, 2010, the Army "threatened to end [her] Army employment and leave her unemployed." Reply 6. But, she concedes that, after her purported "discharge" in August 2009, she continued to work at USAMRIID until she was transferred nine months later to a new position with the Army. Reply 5-6.

In sum, plaintiff's Complaint contains no facts amounting to allegations of "actual discharge." Rather, her own assertions reflect that she was continuously employed with the Army, despite threats and other conduct by persons working at USAMRIID, who allegedly sought to induce her to quit or threatened to fire her. Because plaintiff was never actually terminated from employment, her proposed amendment would be futile.

---

[5] "The general rule is that 'a party is bound by the admissions of [her] pleadings.'" *Grice v. Balt. Cnty.*, 354 Fed. App'x 742, 746 (4th Cir. 2009) (unpublished) (quoting *Lucas v. Burnley*, 879 F.2d 1240, 1242 (4th Cir. 1989)).

For the foregoing reasons, plaintiff's Rule 15(a)(2) Motion for Leave to Amend Complaint shall be denied. However, the Court expresses no opinion as to the merits of plaintiff's constructive discharge claim. An Order consistent with this Opinion will follow.


Date: April 20, 2011                    /s/
                                        Ellen Lipton Hollander
                                        United States District Judge